IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. 2:14-cv-361-MHT-WC |
| | ) | |
| | ) | |
| LAQUANDA O. GILMORE and L&G | ) | |
| ASSOCIATES, LLC, | ) | |
| | ) | |
| Defendants. | ) | |

## RECOMMENDATION OF THE MAGISTRATE JUDGE

Before the court is Plaintiff's "Motion for Default Judgment of Permanent Injunction and Request for Hearing" (Doc. 56), "Emergency Motion for Order to Show Cause Why Default Judgment of Permanent Injunction Should Not be Entered and Request for a Hearing" (Doc. 45), "Motion for Default Judgment" (Doc. 36), and no fewer than six affidavits and declarations filed in support of said motions. The District Judge referred this case to the undersigned Magistrate Judge "for consideration and disposition or recommendation on all pretrial matters as may be appropriate." Order (Doc. 28). Upon review of the motions for default judgment and accompanying affidavits and declarations, the undersigned finds that a hearing is not necessary and recommends that the motions for default judgment of permanent injunction be GRANTED and that default judgment of permanent injunction be entered against Defendants.

## I.      BACKGROUND

### A.      *The Complaint*

Plaintiff brought this action for injunctive relief, pursuant to 26 U.S.C. §§ 7402, 7407, and 7408, against Ms. Laquanda Gilmore ("Ms. Gilmore") and L&g Associates, an Alabama limited liability company that, since 2011, has been owned by Ms. Gilmore as a tax preparation company.  Compl. (Doc. 1) at 1-3.  The complaint sought to

> enjoin the Defendants, and anyone in active concert or participation with them, from:
> a.  acting as federal-tax-return preparers;
> b.  requesting, assisting in, or directing the preparation or filing of federal tax returns, amended returns, or other related tax documents or forms for any person or entity other than herself (in the case of Laquanda Gilmore);
> c.  owning, managing, controlling, or consulting with any tax return-preparation business;
> d.  engaging in any other activity subject to penalty under IRC § 6694, 6701, or any other penalty provision in the IRC; and
> e.  engaging in any conduct that substantially interferes with the proper administration and enforcement of the internal revenue laws.

Compl. (Doc. 1) at 1-2.

Plaintiff alleges that, "since 2009, Ms. Gilmore has continuously and routinely claimed bogus fuel-tax credits and earned-income tax credits on tax returns she prepared for her customers[,] . . . caus[ing] her customers to overstate their refund claims or otherwise underreport their income-tax liabilities."  *Id.* at 3.  Further, since 2011, Ms. Gilmore has prepared said returns "in association with her own company, L&g Associates."  *Id.*  Plaintiff alleges that this conduct "has harmed the United States by causing [Defendants'] customers to claim credits that they are ineligible to claim," and

"[t]he IRS estimates that, [at the time the complaint was filed], the administrative cost of investigating Ms. Gilmore's activities exceed[ed] $50,000." *Id.*

L&g Associates was served with the Complaint on May 27, 2014.  Return Receipt Card (Doc. 3).  After the summons was returned unexecuted at Ms. Gilmore's address (*see* Doc. 4), a Waiver of Service was executed on June 14, 2014, by Ms. Gilmore's first attorney.[1]  Waiver of Service (Doc. 7).

### B.    Defendants' Failure to Meet their Discovery Obligations and Repeated Violations of Court Orders

The court first learned of Defendants' failure to satisfy their discovery obligations on May 26, 2015, when Plaintiff moved to extend its time for discovery by sixty days based on Defendants' "fail[ure] to produce numerous documents that are responsive to the United States' document requests."  Mot. for Extension (Doc. 29) at 2.  According to the Motion, when Plaintiff notified Defendants of the missing documents, Defendants "represented that they erroneously omitted . . . and that they will make those documents available for [Plaintiff] to review and copy."  *Id.*  The court granted the motion for extension to the extent that the parties were allotted thirty additional days to conduct discovery.  Order (Doc. 30) at 1.

---

[1] Defendants were first represented by Attorney Michael Franklin Braun.  *See* Notice of Appearance (Docs. 5 & 6).  That attorney moved to withdraw before he even filed an answer on behalf of Defendants, stating that "[t]he undersigned can no longer represent the Defendants for reasons that comport with the Alabama Rules of Professional Responsibility."  *See* Mot. to Withdraw as Attorney (Doc. 13) at 1. Nearly three months later, another attorney, Ms. Victoria Denise Relf, appeared on behalf of Defendants. *See* Notice of Appearance (Doc. 19).  Ms. Relf filed answers to the complaint and attended the Rule 26 scheduling meeting with Plaintiff's counsel.  However, just five months after entering her appearance, Ms. Relf also moved to withdraw, stating that Defendants had "terminated their attorney-client relationship with" Ms. Relf.  *See* Mot. to Withdraw (Doc. 26) at 1.  Recently, facing the threat of sanctions and default judgement, Defendants retained their third attorney.  *See* Notice of Appearance (Doc. 60).

Three weeks later, on June 19, 2015, Plaintiff filed a Motion to Compel (Doc. 31),

wherein Plaintiff reported as follows:

> 8. On [May 13, 2015], Ms. Gilmore [who was not represented and had previously been unresponsive to emails and phone calls from Plaintiff's counsel] told [Plaintiff's] counsel that Defendants' failure to produce responsive documents for the other tax years (2011– 2014) was due to inadvertence. Gilmore claimed that the remaining responsive documents were in boxes that would be available for [Plaintiff] to pick up by May 20.
>
> 9. [Plaintiff] then moved for a 60-day extension of its time to take discovery. On May 27, the Court granted a 30-day extension, to June 29.
>
> 10. Gilmore initially agreed to send the boxes to [Plaintiff] by FedEx (at [Plaintiff's] expense), and [Plaintiff's] counsel twice sent her prepaid FedEx labels for this purpose. Without explanation, Gilmore never sent the documents by Fed Ex.
>
> 11. When it became apparent that Gilmore was refusing to send the documents by FedEx, [Plaintiff] arranged to have a private courier pick them up. After Gilmore delayed in responding to [Plaintiff's] request to schedule a pick-up time, [Plaintiff] sent a private courier to her residence to retrieve the documents on **June 12, 2015.** The courier retrieved nine bankers boxes of documents, and those boxes arrived [at] [Plaintiff's] counsel's office on June 15, 2015.
>
> **Defendants'** *second* **failure to produce responsive documents**
>
> 12. The nine boxes produced on June 12 contained manila folders containing only what appear to be customer files for the 2010, 2011, and 2013 tax years. Despite Defendants' agreement to produce the responsive tax returns for those years, no tax returns [were] produced. And with respect to the 2014 tax year, no documents whatsoever were produced— whether customer files or tax returns[.]

Mot. to Compel (Doc. 31) at 3-4 (internal citations and footnotes omitted).

The court granted the motion to compel and ordered Defendants to "on or before

June 29, 2015, produce all documents responsive to [Plaintiff's] request for production of

documents, including all tax returns that Defendants prepared for the tax years 2011–

2014 which claimed an earned-income credit, a fuel-tax credit, or an educational-expense

credit."[2]  Order (Doc. 33) at 1-2.  Specifically, the court stated that "it appears to the court that Defendants may be engaging in obstructionist behavior in an attempt to avoid complying with their discovery obligations in this matter" and advised Defendants "***that if they fail to comply with the terms of this order, the court will strongly consider the imposition of monetary sanctions***."  *Id.* at 2 (emphasis in original).  The court also granted Plaintiff's second motion for extension of time to complete discovery (Doc. 32), allowing the parties sixty additional days to complete discovery based on Defendants' failure to comply with their discovery obligations.  Order (Doc. 34) at 1.

Less than two weeks later, on June 29, 2015, the court learned that Defendants' failure to comply with their discovery obligations continued when Plaintiff filed a Motion for Sanctions against Ms. Gilmore for her failure to appear at her deposition.  Mot. for Sanctions (Doc. 35) at 1-8.  In that Motion, Plaintiff explained as follows:

**Gilmore's deposition was noticed for June 24, 2015**

3.  On May 28, 2015, the United States served Gilmore with a notice of deposition. The notice stated that the deposition would take place on June 24, 2015 at the United States' Attorney's office in Montgomery, Alabama. The United States served the notice on Gilmore by email and first-class mail.

**Gilmore knew of her obligation to appear**

4.  On Thursday, June 18, 2015, undersigned counsel called Gilmore to confer about her failure to produce documents in response to a document request. Undersigned counsel also emailed Gilmore for the same purpose. Gilmore did not return the call or the email, so undersigned counsel filed a motion to compel. The Court granted that motion on June 22.

5.  On the afternoon of Monday, June 22, Gilmore called undersigned counsel. She indicated that she was calling in response to the message that undersigned counsel ha[d] left the previous week, and she asked to reschedule her deposition to July 1 or July 6. Undersigned counsel

---

[2] As discussed further below, Defendants did not comply with this Order.

informed Gilmore by both telephone and email that those dates were unworkable and that the deposition would go forward on June 24. Gilmore made no mention of her efforts to secure representation.

6. At approximately 5:30 p.m. Eastern time on June 23, Gilmore left the undersigned a voicemail message requesting that her deposition be rescheduled. Gilmore stated that she was attempting to engage counsel. (Gilmore has thus far been represented by two attorneys; her first counsel, Michael Braun, withdrew by court order on July 10, 2014. Her second counsel, Victoria Relf, withdrew by court order on March 11, 2015.)

7. Approximately 30 minutes after receiving Gilmore's voicemail message, undersigned counsel returned Gilmore's call, calling the number that Gilmore left (her home number). There was no answer, so undersigned counsel left a message informing Gilmore that he was en route to Montgomery (in fact he was on a layover in Charlotte, NC) and that he was unwilling to reschedule the deposition.

8. Gilmore did not appear at the United States' Attorney's office on June 24. Undersigned counsel left a message on Gilmore's home phone and attempted, without success, to reach her on her mobile number. Before the scheduled deposition time, Gilmore never informed undersigned counsel that she was unable to appear for her deposition.

9. Undersigned counsel waited at the United States' Attorney's office until approximately 11:00 a.m., but Gilmore never appeared.

*Id.* at 2-4 (internal citation omitted).

The next week, on July 8, 2015, Plaintiff filed its first Motion for Default Judgment (Doc. 36), based on Defendants' violation of the court's order compelling Defendants to produce documents, Ms. Gilmore's failure to appear at her deposition, and Defendants' "fail[ure] to respond to document requests that [Plaintiff] served on May 28, 2015." Mot. for Default (Doc. 36) at 1. Specifically, Plaintiff alleged that

On June 22, 2015, the Court ordered Defendants to produce all documents responsive to the United States request for production of documents on or before June 29, 2015. . . .

The undersigned counsel advised Gilmore of the Court's June 22 order by telephone conversation on June 22. On the same date, undersigned counsel also emailed a copy of the June 22 order to Gilmore.

On June 22, 2015, Gilmore told undersigned counsel that she would send responsive documents for the 2013 and 2014 tax years to undersigned

counsel by Friday, June 26. Gilmore also said that the remaining responsive documents (that is, copies of tax returns for years 2011 and 2012) would be sent within ten days of June 22.

Defendants have not produced copies of tax returns they prepared which claimed an earned-income credit, a fuel-tax credit, or an educational expense credit for any of the years covered by the Court's June 22 order.

**Defendants have willfully violated other discovery obligations**

**Gilmore's failure to appear at her deposition:** In addition to disregarding the Court's June 22 order, Defendants have also disregarded other discovery obligations. For example, Gilmore failed to appear at her properly noticed June 24 deposition. The United States filed a motion seeking sanctions based on that failure on June 29, 2015.

**Defendants' failure to respond to other document requests.** Defendants have also failed to respond to a second set of document requests that the United States served on May 28, 2015. Those document requests sought information concerning fees that Defendants had been charging their customers.  Responses were due on June 29, but none were provided. On Wednesday, July 1, undersigned counsel left a voicemail message on Gilmore's home telephone to inquire about the status of the responses. As of the date of this filing (July 7) Gilmore has not responded to that voicemail message.

*Id.* at 6-8 (internal citations omitted).  Accordingly, Plaintiff requested the court, pursuant to Rule 37(b)(2)(A) of the Federal Rules of Civil Procedure, issue default judgment of permanent injunction against Defendants for their failure to comply with the court's June 22, 2015, order and their discovery obligations.  *Id.* at 8.

The court set the motion for sanctions and motion for default judgment for hearing and ordered Defendants to "on or before **July 17, 2015**, show cause as to why Plaintiff's Motion for Sanctions (Doc. 35) and Motion for Entry of Default Judgment (Doc. 36) should not be granted."[3]  Order (Doc. 38) at 1.  Additionally, the court ordered Ms. Gilmore to "appear for a deposition on August 6, 2015, at 9:30 a.m. at the United States

---

[3] As discussed further below, Defendants did not comply with this Order.

Attorney's Office for the Middle District of Alabama, 131 Clayton Street, Montgomery, Alabama 36104."[4]  *Id.* at 1-2.  Finally, the court warned as follows:

> **Ms. Gilmore is warned that her failure to comply with this Order will result in the imposition of sanctions against her, which may include monetary sanctions and the recommendation of the undersigned that default judgment be entered against Defendants.**
> **Further, Ms. Gilmore's failure to appear at the hearing ordered above may result in the issuance of a bench warrant for her arrest.**

*Id.* at 2 (emphasis in original).

Defendants failed to file any response to the court's order to show cause.  At the hearing held on July 22, 2015, Plaintiff's counsel reviewed the lengthy history of Defendants failing to comply with their discovery obligations and the court's prior order. *See* Mins. (Doc. 40).  Ms. Gilmore claimed she had been unable to attend her deposition or comply with the court's order based on some personal or marital issues she was experiencing.  The court later issued two written orders to reflect the rulings made at the hearing.  *See* Orders (Docs. 42 & 43).  First, the court granted Plaintiff's Motion for Sanctions (Doc. 35) based on Ms. Gilmore's failure to show at her first properly noticed deposition, ordering as follows:

> It is, therefore
> ORDERED that the motion (Doc. 35) is GRANTED; as a sanction for her failure to appear for her properly noticed deposition, Ms. Gilmore shall reimburse the United States for the travel expenses and court-reporter fee that it incurred for the June 24 deposition of Ms. Gilmore. Further, it is
> ORDERED that Ms. Gilmore shall appear for her deposition on August 6, 201[5] at 9:30 a.m. at the United States Attorney's Office, located at 131 Clayton Street, Montgomery, AL 36104, and at that time she

---

[4] As discussed further below, Ms. Gilmore did not comply with this Order.

shall deliver to counsel for the United States a certified check or a cashier's check, payable to the United States Treasury in the amount of $1,919.42.[5]

Order (Doc. 42) at 1-2.  Second, the court gave Defendants another chance to comply with the discovery orders prior to recommending default judgment and ordered as follows:

> [N]o later than 5:00 p.m. on July 24, 2015, Defendants shall deliver the following documents to Curtis Weidler, Trial Attorney, c/o Stephen Doyle, Chief, Civil Division, United States Attorney's Office, 131 Clayton Street, Montgomery, AL 3610:
> 1. copies of all federal income-tax returns that they prepared, filed, or assisted in the preparation or filing of for years 2011, 2012, 2013, and 2014, for any customer that claimed a credit for fuel tax, earned income, or education expenses;
> 2. copies all amended federal income-tax returns that they prepared, filed, or assisted in the preparation of in respect of an of the following tax years:  2011, 2012, 2013, or 2014.
> Further, it is
> ORDERED, that the Court will otherwise reserve its ruling on the Motion (Doc. 36) for default judgment of permanent injunction.[6]

Order (Doc. 43) at 1-2.  The same day as the court's issuance of these two written orders summarizing the rulings made at the hearing, Ms. Gilmore called the undersigned's Chambers to report that the power to her office had been disconnected and would not be restored until Monday, July 27, 2015.  *See* Order (Doc. 44) at 1.  Accordingly, the court extended Defendants' deadline to turn over the documents discussed above, and ordered that the documents be delivered by 5:00 p.m. on Monday, July 27, 2015.[7]  *Id.*  At that time, again, "***Defendants [we]re warned that no further extensions will be granted***

---

[5] As discussed further below, Ms. Gilmore did not comply with this Order.

[6] As discussed further below, Defendants did not comply with this Order.

[7] As discussed further below, Defendants did not comply with this Order.

**absent good cause, and the failure to comply with this Order will result in the imposition of sanctions, which may include monetary sanctions and the recommendation of the undersigned that default judgment be entered against Defendants.**" *Id.* at 2.

On July 31, 2015, one week following the issuance of the court's orders for Ms. Gilmore to pay sanctions, attend a deposition, and turn over documents (Docs. 42, 43, & 44), Plaintiff filed its second motion for default judgment, titled "Emergency Motion for Order to Show Cause why Default Judgment of Permanent Injunction Should Not be Entered and Request for a Hearing." Mot. (Doc. 45) at 1-13. This motion, and supporting affidavits (Docs. 46, 47), notified the court that, despite the additional time allotted based on Ms. Gilmore's representations regarding the lack of power at her office, Defendants had failed to produce the tax returns for years 2011-2014, in violation of the court's July 24, 2015, order (Doc. 44). *Id.* at 1. **In fact, this motion notified the court that Ms. Gilmore—who had been ordered to turn over documents by 5:00 p.m. on July 27, 2015—delivered a flash drive to Plaintiff's local office approximately twenty minutes prior to the deadline set by the court, and that jump drive contained no files at all**.[8] *Id.* at 7-8. Plaintiff requested the court set the matter for a hearing on August 6, 2015, the date on which the court had already ordered Ms. Gilmore to attend her deposition. *Id.* at 2.

---

[8] Interestingly, Ms. Gilmore later represented to the court that the power at her office had not been reconnected, and that she had not thought of the idea of bringing her work computer to her home where she does have access to electrical power. *See* Mins. (Doc. 49). Accordingly, the court can draw no conclusion other than that Ms. Gilmore intentionally sought to deceive both the court and Plaintiff by delivering what she knew to be an empty jump drive.

The court set the motion for a hearing to be held on August 6, 2015, and ordered Defendants to "bring to the hearing **paper copies** of all documents that are covered by the court's July 24, 2015, Order (Doc. 44)." [9]   Order (Doc. 48) at 1-2.   Further, Defendants were again warned that their "*failure to comply with any part of this Order will result in the imposition of sanctions against [Ms. Gilmore], which may include monetary sanctions and the recommendation of the undersigned that default judgment be entered against Defendants.*"  *Id.* (emphasis in original).

In summary, Defendants were to show up at the August 6 hearing having (1) paid the sanctions imposed against them, (2) attended Ms. Gilmore's properly noticed deposition that morning as ordered by the court, and (3) brought paper copies of the tax returns previously sought by Plaintiff.

At some point around this time, Ms. Gilmore again called the undersigned's Chambers to request additional time to pay the sanctions issued against her for her failure to attend her first deposition.   At that time, the undersigned's staff made clear to Ms. Gilmore that any relief she seeks from the court must come in the form of a written motion properly filed with the Clerk of Court and placed on the record.   On August 5, 2015, [10] Ms. Gilmore [11] did file a "Motion for Extension of Time to Pay Deposition

---

[9] As discussed further below, Defendants did not comply with this Order.

[10] While the motion was hand filed on August 5, 2015, it was not placed on the docket until August 6, 2015, after the hearing concluded.

[11] Ms. Gilmore purported to file the motion on behalf of herself and L&g Associates.  *See* Mot. (Doc. 51). However, as Ms. Gilmore has previously been told, "artificial entities, such as an LLC, cannot appear *pro se* and cannot be represented by someone who is not a licensed attorney."  *Udoinyion v. Guardian Sec.*, 440 F. App'x 731, 735 (11th Cir. 2011); *see* Order (Doc. 18).

Costs," wherein Ms. Gilmore claimed to have made "her best efforts" to fulfill her obligations in this case, to have "shown a willingness to be forthcoming with the Court in the past," and to have "attempted in good faith to comply [with the court's order]."  Mot. for Extension (Doc. 51) at 1-2.

On August 6, 2015, the court held the hearing on Plaintiff's second motion for default (Doc. 45).  At the hearing, the court learned that Ms. Gilmore had not paid the sanctions previously assessed against her, had not shown for her deposition, and had not brought any paper documents to be turned over to Plaintiff.  However, Defendants had retained new counsel, Mr. Alfred Norris, who attended the hearing.  At the hearing, the undersigned summarized Defendants' repeated misconduct, as set forth above.  Mr. Norris explained that Ms. Gilmore was in the middle of a divorce that was negatively affecting her professionally, financially, and emotionally, which was why Ms. Gilmore had been uncooperative through the pendency of this case.  Finding instead that Ms. Gilmore's misconduct throughout this case was both willful and in bad faith, the court ordered Defendants to produce copies of tax returns for the years 2011-2014 by the close of business that day,[12] and Mr. Norris assured the court that he would go with Ms. Gilmore to her office to retrieve the files from the computer.  Based on Ms. Gilmore's representations that she still had no power at her office, Mr. Norris even offered to take the computer from Ms. Gilmore's office to his own for a power source if that was necessary, and at the conclusion of the hearing, Mr. Norris represented to the court that he would notify the court of his efforts to produce the missing documents, whether or not

---

[12] As discussed further below, Defendants did not comply with this Order.

those efforts were successful.  **Despite his promises, the court never heard from Mr. Norris again.**

Following the hearing, the court issued a written order finding that "Defendants have willfully and intentionally attempted to evade their discovery obligations in this case."  Order (Doc. 57) at 2.  Further, the court found "that Ms. Gilmore has willfully and intentionally violated at least five of this court's orders."  *Id.*  Accordingly, the court ordered[13] (1) sanctions against Defendants in the amount of $1,500 for violations of the court's prior orders; and (2) sanctions against Defendants in the amount of $1,120 to reimburse Plaintiff for the costs associated with the second deposition at which Ms. Gilmore failed to appear.  Order (Doc. 57) at 2-3.  The order also granted in part Defendants' prior motion for extension of time to pay the first deposition costs, making all sanctions due on August 14, 2015.  *Id.*

Plaintiff again notified the court of problems with Defendants when it filed its third Motion for Default Judgment (Doc. 56), asserting that Defendants failed to comply with the court's August 6th Order that the tax return documents be produced by close of business that day.  Plaintiff claimed that, "[o]n the morning of August 7, 2015, Ms. Gilmore delivered a flash drive . . . to the United States Attorney's Office for the Middle District of Alabama," but that "[u]pon inspection of the flash drive," Plaintiff learned that, while it did contain some documents, it did not contain any tax returns.  Mot. (Doc. 56) at 2.

---

[13] As discussed further below, Defendants did not comply with this Order.

On August 17, 2015, Plaintiff notified the court that, although August 14 had come and gone, Defendants had not paid the sanctions ordered in the court's August 12, 2015, Order. Dec. (Doc. 59) at 1. Defendants also failed to pay the ordered sanctions to the court by August 14. In fact, to date, Defendants have not paid any sanctions imposed against them.

Citing the continued misconduct by Defendants, Plaintiff has also filed a Motion for Contempt (Doc. 66) and a Motion for Sanctions (Doc. 67).[14]

## II.   DISCUSSION

### A.   *Plaintiff is entitled to Default Judgment*

Pursuant to Federal Rule of Civil Procedure 37(b)(2)(A), Plaintiff seeks an order striking Defendants' answers and granting it default judgment that permanently bars Defendants from preparing tax returns for others. Pl.'s Mot. (Doc. 56) at 8, 17. Rule 37 authorizes the court to impose any just sanction against a party that violates an order to provide or permit discovery. Fed. R. Civ. P. 37(b)(2)(A). The rule's specific list of possible sanctions includes an order "striking pleadings in whole or in part" or an order "rendering a default judgment against the disobedient party." Fed. R. Civ. P. 37(b)(2)(A)(iii), (vi). "'[D]istrict courts enjoy substantial discretion in deciding whether and how to impose sanctions under Rule 37.'" *J.B. Hunt Transp., Inc. v. S & D Transp., Inc.*, 589 F. App'x 930, 933 (11th Cir. 2014) (quoting *Chudasama*, 123 F.3d at 1366).

---

[14] As addressed below, the undersigned recommends these motions, and any others that may remain pending, be denied as moot after the entry of default judgment and permanent injunction against Defendants.

> We previously have stated that, although Rule 37 confers upon district court judges broad discretion to fashion appropriate sanctions for the violation of discovery orders, *see Malautea v. Suzuki Motor Co.*, 987 F.2d 1536, 1542 (11th Cir. 1993), this discretion is not unbridled. *Wouters v. Martin County*, 9 F.3d 924, 933 (11th Cir. 1993). The decision to dismiss a claim or enter default judgment "ought to be a last resort—ordered only if noncompliance with discovery orders is due to willful or bad faith disregard for those orders." *Cox v. American Cast Iron Pipe Co.*, 784 F.2d 1546, 1556 (11th Cir. 1986).

*United States v. Certain Real Prop. Located at Route 1, Bryant, Ala.*, 126 F.3d 1314, 1317 (11th Cir. 1997).  Rule 37 does not, however, "require the vain gesture of first imposing [other] ineffective lesser sanctions."  *Malautea v. Suzuki Motor Co.*, 987 F.2d 1536, 1544 (11th Cir. 1993).

The severe sanction of default judgment is appropriate in this case because Defendants conduct has clearly been willful and in bad faith.  Defendants willfully chose not to meaningfully cooperate in discovery, not to comply with court orders, and not to participate in this litigation with any consistency.  If not evidenced by the sheer number of times Defendants have utterly failed to do as the court ordered, their bad faith is certainly evidenced by Ms. Gilmore's inability to keep straight the excuses she has presented to the court.  As just one example, the court would point to when Ms. Gilmore sought an extension of time to provide a jump drive of documents to Plaintiff because the power at her office had been disconnected and would not be reconnected for a few additional days.  *See* Order (Doc. 44) at 1.  Yet, on the final date of the extended time, Ms. Gilmore turned over an entirely blank jump drive to Plaintiff.  *See* Affs. (Docs. 46 & 47).  At one point, Plaintiff asserted that she had "attempted in good faith to comply by putting the requested files on a flash drive" and that the blank jump drive was "due to a

good faith error and without her knowledge."  Mot. for Extension (Doc. 51) at 2. However, Ms. Gilmore came into court days later and represented (1) that the power was still shut off at her office and (2) that she had never thought of the idea of taking her office computer to her home or another location with power to access the files.  If both of Ms. Gilmore's assertions to the court at the hearing were true, then Ms. Gilmore must have intentionally and willfully turned over a jump drive to Plaintiff knowing it was blank in spite of the court's July 24th order (Doc. 44) that she provide Plaintiff with discovery documents.

Additionally, it is abundantly clear that a less drastic sanction will not suffice to ensure Defendants comply with the courts orders or the judicial process.  In fact, as is thoroughly set forth above, the court has already attempted to urge Defendants' compliance through less drastic sanctions. Defendants' repeated defiance, refusal to comply with court orders, and refusal to pay the financial sanctions previously imposed as a lesser sanction are evidence of the futility of imposing lesser sanctions.

Accordingly, the undersigned finds that striking Defendants' answers and granting default judgment are the most appropriate sanctions in this case and recommends that the motions seeking default judgment be granted.

### B.       Plaintiff is entitled to a Permanent Injunction

Because the complaint in this case seeks a permanent injunction, this court is bound by the provision of Rule 65 of the Federal Rules of Civil Procedure.  Rule 65(d) requires that "[e]very order granting an injunction" must "state the reasons why it

issued," "state its terms specifically," and "describe in reasonable detail . . . the act or acts restrained or required."

Because this injunction will result from default judgment, it is important to note that "[a] defaulted defendant is deemed to 'admit[] the plaintiff's well-pleaded allegations of fact.'" *United States v. Ruetz*, 334 F. App'x 294, 295 (11th Cir. 2009) (quoting *Nishimatsu Constr. Co., Ltd. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975)); *see also Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir.1981) (en banc) (adopting as binding precedent all of the decisions of the former Fifth Circuit handed down prior to October 1, 1981).

In this case, Plaintiff seeks a default judgment for permanent injunction pursuant to 26 U.S.C. §§ 7402(a), 7407, and 7408.  The court will consider each separately below. First, for the court to issue an injunction pursuant to § 7407,

> three prerequisites must be met: first, the defendant must be a tax preparer; second, the conduct complained of must fall within one of the four areas of proscribed conduct, § 7407(b)(1)[, including that a tax return preparer understates a taxpayer's liability]; and third, the court must find that an injunction is "appropriate to prevent the recurrence" of the proscribed conduct, § 7407(b)(2).

*United States v. Ernst & Whinney*, 735 F.2d 1296, 1303 (11th Cir. 1984).

Here, Plaintiff pleaded that "[Ms.] Gilmore is a tax-return preparer," and "since 2011, Ms. Gilmore has prepared [tax] returns in association with her own company, L&g Associates."  Compl. (Doc. 1) at 2-3.  Additionally, Plaintiff pleaded, "Ms. Gilmore has continuously and routinely claimed bogus fuel-tax credits and earned-income tax credits on tax returns she prepared for her customers.  By doing this, Ms. Gilmore causes her

customers to overstate their refund claims or otherwise underreport their income-tax liabilities." *Id.* at 3. Deeming these well-pleaded facts as true, the court finds that an injunction is appropriate to prevent the recurrence of Defendants understating taxpayer's liability on tax returns because, in large part, there is simply nothing before the court to indicate that Defendants have any interest in abiding by the IRS laws or preparing honest tax returns, just as Defendants have no interest in abiding by orders of this court.

Section 7408 authorizes a district court to enjoin any person from engaging in specified conduct, including that subject to penalty under § 6701, if injunctive relief is appropriate to prevent recurrence of that conduct. 26 U.S.C. § 7408(b)-(c). Section 6701 prohibits any person from aiding or assisting in, procuring, or advising with respect to, the preparation or presentation of a tax return, affidavit, claim, or any other document, knowing (or having reason to believe) that such portion will be used in connection with any material matter arising under the internal revenue laws, and knowing that such portion, if used, will result in an understatement of the tax liability of another person. 26 U.S.C. § 6701(a)(1)-(3).

Here, Plaintiff pleaded, "Ms. Gilmore has prepared tax returns that she knew contained improper deductions and credits and that she knew would understate her customer's tax liabilities," which is conduct subject to penalty under § 6701. Compl. (Doc 1) at 15-16. Deeming these well-pleaded facts as true, the undersigned finds that injunctive relief is appropriate to prevent the recurrence of that conduct, as Defendants will likely continue to engage in such conduct absent an injunction.

Section 7402 authorizes a district court to issue injunctions "as may be necessary or appropriate for the enforcement of the internal revenue laws."  26 U.S.C. § 7402(a). For an injunction under § 7402(a), the Eleventh Circuit requires a showing that (1) it is likely that Plaintiff will suffer irreparable injury if Defendants' conduct continues; (2) remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) it is unlikely that Defendants will be harmed by the injunction; and (4) an injunction will serve the public interest.  *Ernst & Whinney*, 735 F.2d at 1301 ("[T]he decision to issue an injunction under § 7402(a) is governed by the traditional factors shaping the district court's use of the equitable remedy."); *see eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006) (listing the traditional factors); *see also United States v. Demesmin*, No. 6:14-CV-1537-ORL-22, 2015 WL 737056, at *4 (M.D. Fla. Jan. 15, 2015).

Here, Plaintiff pleaded that, if Defendants are "not enjoined from engaging in fraudulent and deceptive conduct, [Plaintiff] will suffer irreparable injury by wrongfully providing federal income-tax refunds to individuals who are not entitled to receive them" and that Defendants "will not suffer irreparable harm because the injunction sought will merely enjoin [Defendants] from engaging in illegal conduct."  Compl. (Doc. 1) at 16-17. Additionally, monetary damages would not be an adequate remedy at law.  This is evidenced, in part, by Defendants failure to pay monetary sanctions previously ordered by the court.  Lastly, Plaintiff pleaded that "enjoining [Defendants] is in the public interest because an injunction, backed by the Court's contempt powers if needed, will stop [Defendants'] illegal conduct and the harm she causes the United States."  *Id.* at 17.

Accordingly, deeming these well-pleaded facts as true, the undersigned finds that all four factors considered weigh in favor of injunctive relief, which is necessary and appropriate for the enforcement of the internal revenue laws and to prevent the recurrence of Defendants' illegal conduct.

## III.   CONCLUSION

For the reasons stated above, it is the RECOMMENDATION of the Magistrate Judge

(1)   that the "United States' Motion for Default Judgment of Permanent Injunction and Request for Hearing" (Doc. 56), "Emergency Motion for Order to Show Cause Why Default Judgment of Permanent Injunction Should Not be Entered and Request for a Hearing" (Doc. 45), and "Motion for Default Judgment" (Doc. 36) be GRANTED;

(2)   that default judgment be entered against Defendants;

(3)   that pursuant to 26 U.S.C. §§ 7402(a), 7407, and 7408, a permanent injunction be entered against Defendants, enjoining the Defendants, and anyone in active concert or participation with them, from:

    a. acting as federal-tax-return preparers;
    b. requesting, assisting in, or directing the preparation or filing of federal tax returns, amended returns, or other related tax documents or forms for any person or entity other than herself (in the case of Laquanda Gilmore);
    c. owning, managing, controlling, or consulting with any tax return-preparation business;
    d. engaging in any other activity subject to penalty under IRC § 6694, 6701, or any other penalty provision in the IRC; and
    e. engaging in any conduct that substantially interferes with the proper administration and enforcement of the internal revenue laws.

(4)     that all pending motions, including the Motion for Contempt (Doc. 66) and Motion for Sanctions (Doc. 67), be DENIED as moot based on the default judgment and permanent injunction.

It is further

ORDERED that the parties are DIRECTED to file any objections to the said Recommendation on or before **October 9, 2015**.  A party must specifically identify the factual findings and legal conclusions in the Recommendation to which objection is made; frivolous, conclusive, or general objections will not be considered.  Failure to file written objections to the Magistrate Judge's findings and recommendations in accordance with the provisions of 28 U.S.C. § 636(b)(1) shall bar a party from a *de novo* determination by the District Court of legal and factual issues covered in the Recommendation and waives the right of the party to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions accepted or adopted by the District Court except upon grounds of plain error or manifest injustice.  *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982); 11th Cir. R. 3-1; *see Stein v. Lanning Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982); s*ee also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981) (*en banc*).  The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Done this 25th day of September, 2015.

/s/ Wallace Capel, Jr.
WALLACE CAPEL, JR.
UNITED STATES MAGISTRATE JUDGE